TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SHAWN J. NELSON (Cal. Bar No. 185149)
Assistant United States Attorney
Chief, International Narcotics, Money
 Laundering, & Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: 213-894-5339
     Facsimile: 213-894-0142
     E-mail: shawn.nelson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 5:20-CR-00057-FMO-17 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM RE: ANGELLO STEVEN MEDINA |
| v. | Hearing Date: June 15, 2021 |
| FNU LNU, aka "Manny," et al., [#17 ANGELLO STEVEN MEDINA] | Hearing Time: 1:00 p.m. Location: Courtroom of the  Honorable Fernando M. Olguin |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel
of record, the Acting United States Attorney for the Central District
of California and Assistant United States Attorney Shawn J. Nelson,
hereby files its Sentencing Memorandum regarding defendant Angello
Steven Medina.
    ///

1    This Sentencing Memorandum is based upon the attached memorandum

2  of points and authorities, the files and records in this case, and

3  such further evidence and argument as the Court may permit.

4   Dated: June 15, 2021            Respectfully submitted,

5                                   TRACY L. WILKISON
                                    Acting United States Attorney
6
                                    SCOTT M. GARRINGER
7                                   Assistant United States Attorney
                                    Chief, Criminal Division
8

9                                    /S/ *Shawn J. Nelson*
                                    SHAWN J. NELSON
10                                  Assistant United States Attorney

11                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# GOVERNMENT'S SENTENCING POSITION

## I.   INTRODUCTION AND RECOMMENDATION

Defendant is before the court for sentencing following his guilty plea to conspiring to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii).  Defendant's conviction followed his participation in the conspiracy by agreeing to store and storing a tire that contained approximately sixty pounds of methamphetamine that had been smuggled into the United States in his garage.[1]

United States Probation ("USPO") has calculated an offense level of 27 and a criminal history category of I, which results in in a guidelines range of 70-87 months' imprisonment.  USPO recommends a sentence of 70 months' imprisonment, three years of supervised release, a $25,000 fine, and a mandatory special assessment of $100.[2] The government agrees with USPO's guidelines calculations and recommends a sentence of 70 months' imprisonment followed by a three-year term of supervised release upon the conditions recommended by USPO and a $100 special assessment.  The government recommends that all fines be waived.

## II.   STATEMENT OF FACTS

Prior to June 2019, there was a conspiracy to import methamphetamine into the United States from Mexico and to further distribute that methamphetamine.  PSR ¶ 14.  Defendant joined this

---

[1] Defendant additionally engaged in retail-level or just above retail-level sales of small amounts of methamphetamine and cocaine from his home.

[2] Defendant would have been subject to a 120-month mandatory minimum term of imprisonment because of the amount of methamphetamine involved in his offense.  However, he has satisfied the "safety valve" requirements in 18 U.S.C. § 3553(f).

1    conspiracy no later than June 2019.  Ibid.  In furtherance of this

2    conspiracy, defendant agreed to store a tire that contained

3    approximately sixty pounds of methamphetamine, and which had been

4    smuggled over the border from Mexico, at his residence in the San

5    Fernando Valley.  PSR ¶¶ 15-18.

6        That tire of methamphetamine was delivered to defendant's house

7    on June 15, 2019, and defendant kept that tire in his garage.  Ibid.

8        Additionally, during this time, defendant dealt smaller, just-

9    above-retail quantities of methamphetamine and cocaine from his

10   residence.  PSR ¶¶ 17, 19-21.  This was reflected in intercepted

11   phone calls in which defendant directed his wife to deliver small

12   quantities of drugs on his behalf.  During the same search that

13   resulted in recovery of the tire in defendant's garage, agents found

14   1,232 grams of methamphetamine and 393 grams of cocaine in a safe in

15   defendant's bedroom.  PSR ¶¶ 17, 19-21.

16 **III. GUIDELINES CALCULATION**

17        The parties stipulated to a base offense level of 38, based on

18   the large quantities of controlled substances that defendant was

19   involved with.  Plea Agreement (CR 152) ¶ 14.  USPO found the same

20   base offense level.  PSR ¶ 31.  However, because the parties also

21   stipulated that defendant was entitled to an adjustment for minor

22   role pursuant to 3B1.2(b), defendant's offense level is reduced to

23   34.  Plea Agreement ¶ 14; PSR ¶¶ 28-31.  Following application of

24   that mitigating role adjustment and defendant's acceptance of

25   responsibility, defendant's offense level becomes 29.  PSR ¶¶ 38-45.

26   Furthermore, because defendant satisfies the requirements of the

27   safety valve as set forth in USSG §§ 2D1.1(b)(18) and 5C1.2(a),

28

defendant's offense level is further reduced by two levels to 27. PSR ¶¶ 33-34.

USPO has found that defendant has no criminal history points, which puts defendant in criminal history category I.  An offense level of 27 and a criminal history category of I results in a sentencing range of 70-87 months' imprisonment.

**IV.   THE GUIDELINES AND THE SECTION 3553(A) FACTORS**

    **A.   The Guidelines are the Starting Point in Determining an Appropriate Sentence**

The starting point for the Court in determining the appropriate sentence under the Sentencing Reform Act as modified by United States v. Booker, 543 U.S. 220 (2005), is the analysis and consideration of the Guideline factors.  543 U.S. at 259 (noting that Sentencing Reform Act "nonetheless requires judges to take account of the Guidelines together with other sentencing goals"); see also United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir. 2006) (noting that the "[c]ontinuing duty of district courts to consult the Guidelines is statutory").  The Sentencing "Commission developed Guidelines sentences using an empirical approach based on data about past sentencing practices, including 10,000 presentence investigation reports." Kimbrough v. United States, 552 U.S. 85, 96 (2007) (citing USSG § 1A1.1, intro. comment., pt. A, ¶ 3); see also United States v. Goldberg, 491 F.3d 668, 673 (7th Cir. 2007) (stating that the Sentencing Guidelines were "drafted by a respected public body with access to the best knowledge and practices of penology").

In United States v. Carty, 520 F.3d 984 (9th Cir. 2008) (en banc), the Ninth Circuit declined to adopt a presumption of reasonableness for appellate review of within-Guideline sentences,

but it stated that "normally" a Guideline sentence will not be found
unreasonable on appeal.  520 F.3d at 988.  Carty also provided a
detailed framework for federal sentencing.  The Court must begin by
determining the applicable guideline range - this range is a
"starting point" and "initial benchmark."  Carty, 520 F.3d at 991.
The Court must then ensure that the parties have an opportunity to
argue for the sentence that they believe is appropriate.  Id.  The
Court must also consider § 3553(a) in conjunction with these
arguments.  Id.  The Court cannot presume that a Guideline sentence
is reasonable and cannot give the Guidelines more or less weight than
the other § 3553(a) factors.  Id.  The sentencing must be an
"individualized" determination.  Id.  Importantly, in deciding the
extent of any proposed departure or variance from the Guideline
range, the Court must consider whether the justification is
sufficiently compelling to support the degree of the variance.  Id.
The greater the variance, the more persuasive the justification
should be "because other values reflected in Section 3553(a) - such
as, for example, unwarranted disparity" counsel against the variance.
Id. at 991-92.  Also importantly, the Court must provide enough of an
explanation to enable meaningful appellate review, and this will vary
depending upon the complexity of the case.  Id. at 992.

   **B.  Analysis of the Section 3553(a) Factors**

   The applicable Sentencing Guidelines range, while not
definitive, provides the starting point for finding a reasonable
sentence and must then be considered with the factors set forth in §
3553(a).  See Cantrell, 433 F.3d at 1279.  "To comply with the
requirements of Booker, the district court must have sufficiently
considered the Guidelines as well as the other factors listed in §

4

3553(a).  This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence."  United States v. Nichols, 464 F.3d 1117, 1125 (9th Cir. 2006) (quoting United States v. Knows His Gun, 438 F.3d 913, 918 (9th Cir. 2006)).

The facts of this case, including those in mitigation, demonstrate that the government's recommendation described herein fulfills the statutory purposes of 18 U.S.C. § 3553(a) and is an "individualized determination" of an appropriate sentence.[3]  See Carty, 520 F.3d at 991.

As to the nature and circumstances of the offense, defendant's involvement in a conspiracy to import and distribute methamphetamine is a serious offense.  See United States v. Chen, 979 F.2d 714, 718 (9th Cir. 1992) ("Drug crimes are very serious and represent one of the greatest threats to our society.").  While defendant's participation in the instant offense was of a limited time and nature, that is accounted for in the two-level downward adjustment

---

[3] The § 3553(a) factors include such things as:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; (D) to provide the defendant with needed educational or vocational training, medical care, or other correction treatment in the most effective manner; . . . [and] (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a).

5

1  pursuant to USSG 3B1.2(b) and the four-level additional reduction in

2  defendant's base offense level pursuant to USSG 2D1.1(a)(5)(iii).

3  This total reduction of six levels adequately addresses defendant's

4  minor role in the offense.  Furthermore, defendant's storage of the

5  tire full of methamphetamine in his garage also took place alongside

6  his own just-above-retail drug business that he ran out of his home.

7       Defendant's history and characteristics are somewhat mitigating.

8  He was raised in a healthy family environment.  PSR ¶¶ 60-67.  He

9  completed high school and attended college.  PSR ¶¶ 67, 86-90.  He

10  has little criminal history, and that which he does have is aged.

11  PSR ¶¶ 51-58.  He has repeatedly and successfully held a job.  PSr

12  ¶¶ 90-96.  He is well liked by friends and peers and seems to be of a

13  positive personality.  PSR ¶ 76.  All of these circumstances and

14  characteristics however show that he could have and should have been

15  able to live and provide a good life without resorting to drug

16  dealing.  More than many defendants, this defendant's participation

17  in drug trafficking seems to be more the product of his own free

18  decision making.

19       The public needs to be protected from, and defendant needs to be

20  deterred from, future participation in large-scale drug importation

21  and distribution and from lower-level drug dealing.  A sentence

22  consistent with the government's recommendation is a just punishment

23  that promotes respect for the law and provides for deterrence and

24  protection of the public.  See 18 U.S.C. § 3553(a)(2); see also

25  United States v. Zakhor, 58 F.3d 464, 466 (9th Cir. 1995) (noting

26  that the "Sentencing Commission . . . has a mandate to create

27  sentencing policies that consider 'the deterrent effect a particular

28

6

sentence may have on the commission of the offense by others'") (citation omitted).

In terms of sentencing disparity, the government submits that the Court consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6); see also United States v. Guerrero-Velasquez, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (recognizing that guidelines "help to maintain uniformity in sentencing throughout the country").  Moreover, the Ninth Circuit has observed that a sentence consistent with the guideline range is unlikely to be disparate because such a sentence "represents the sentence that most similarly situated defendants are likely to receive." United States v. Becerril-Lopez, 541 F.3d 881, 895 (9th Cir. 2008).

In this case, a sentence consistent with the government's recommendation would address all of the facts in this case when taken in consideration with the § 3553(a) factors, including those in aggravation and mitigation.  Therefore, by imposing a sentence consistent with the plea agreement and the government's recommendation of 70 months' imprisonment, the Court can guarantee that there will be no disparity between defendant's sentence and that of any similarly situated defendant.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 70 months' imprisonment followed by a three-year term of supervised release on the terms and conditions recommended by USPO and a $100 special assessment.

7